**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000594
31-MAR-2017
08:38 AM**

NOS. CAAP-14-0000594 AND CAAP-16-0000029

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


**CAAP-14-0000594**
JAY D. CADIZ, Claimant-Appellant, v.
QSI, INC., Employer-Appellee, and FIRST INSURANCE COMPANY OF
HAWAII, LTD., Insurance Carrier-Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(DOCKET NO. AB 2012-099 (2-10-46361))

AND

**CAAP-16-0000029**
JAY D. CADIZ, Claimant-Appellant, v.
QSI, INC., Employer-Appellee, and FIRST INSURANCE COMPANY OF
HAWAII, LTD., Insurance Carrier-Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(DOCKET NO. AB 2013-250 (2-11-46922))


SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Leonard and Reifurth, JJ.)

This consolidated appeal arises out of an Amended Claim

for Workers' Compensation Benefits WC-5 (**Amended WC-5**)[1] filed by

Claimant-Appellant Jay D. Cadiz (**Claimant**) with the Director of

the Department of Labor and Industrial Relations (**Director**), in

which Claimant sought compensation for illnesses and symptoms

---

[1] The filing date of the Amended WC-5 is listed as November 28, 2011 in LIRAB Case No. AB 2012-099, and November 21, 2011 in LIRAB Case No. AB 2013-250.

related to exposure to mold while employed by QSI, Inc. (**Employer**).[2] Claimant appeals from two decisions and orders filed by the Labor and Industrial Relations Board (**LIRAB**). Claimant appeals from the (1) March 10, 2014 Decision and Order (LIRAB Case No. AB 2012-099), and (2) December 22, 2015 Decision and Order (LIRAB Case No. AB 2013-250).

In LIRAB Case No. AB 2012-099, the case underlying CAAP-14-0000594, the LIRAB affirmed the decision of the Director finding, *inter alia*, that Claimant did not sustain a work related injury on August 31, 2007. In LIRAB Case No. AB 2013-250, the case underlying CAAP-16-0000029, the LIRAB vacated the decision of the Director denying the November 2011 claim as a new or subsequent injury for a November 14, 2011 work injury, but did not remand the case to the Director. LIRAB instead concluded that the November 2011 claim was not a new claim, rather it was an amended claim for the previously claimed injury.

In CAAP-14-0000594, Claimant argues that the LIRAB: (1) failed to properly apply the presumption of compensability under Hawaii Revised Statutes (**HRS**) § 386-85 (2015); (2) erroneously credited Dr. Roger L. Likewise's (**Dr. Likewise**) report; and (3) erroneously excluded Exhibits A-1, B, and FF.

---

[2] On September 3, 2010, Claimant filed a claim for workers' compensation benefits for an August 31, 2007 injury. Claimant identified his injury and illness as: "Headaches, dizziness, [respiratory] problems, memory problems, vision, skin problems, anxiety." In November 2011, Claimant filed an Amended WC-5 to "[c]orrect date of discovery of connection of exposure to illnesses and symptoms" to November 14, 2011. Claimant described his injury and illnesses as: "Headaches, respiratory illnesses, cognitive impairment, psychological injury, Chronic rhinitis/sinusitis, Vertigo, Tinnitus, Palpitations, Sleep Disturbance, Myalgia, GERD, Gastritis, Urinary Frequency, Dysuria, Malaise, Fatigue."

In CAAP-16-0000029, Claimant argues the LIRAB erred by not remanding the proceedings for a ruling on the merits.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Cadiz's points of error as follows:

(1) Claimant contends that the LIRAB failed to properly apply the presumption of compensability under HRS § 386-85 and challenges FOFs 54, 55, and 56, in the March 10, 2014 Decision and Order, which read:

> [FOF 54]: The [LIRAB] finds that through the opinions of Drs. Cupo, Likewise, and Arora, Employer presented relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable person that Claimant's claimed injuries are not connected to his work.

> [FOF 55]: The [LIRAB] finds that Employer has presented substantial evidence that Claimant's claimed conditions are not related to his employment with Employer.

> [FOF 56]: The [LIRAB] has applied the presumption of compensability and finds that Employer has presented substantial evidence to rebut and overcome the presumption.

HRS § 386-85 provides in pertinent part, "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim is for a covered work injury[.]" It is well established that the presumption "imposes upon the employer the burden of going forward with the evidence and the burden of persuasion." Van Ness v. Dep't Of Educ., 131 Hawai'i 545, 558, 319 P.3d 464, 477 (2014) (citing Akamine v. Hawaiian Packing & Crating Co., 53 Haw. 406, 408, 495 P.2d 1164, 1166 (1972)). The employer may overcome the presumption "only [with] substantial evidence that [the injury]

3

is unrelated to employment." Akamine, 53 Haw. at 408, 495 P.3d at 1166. "The term 'substantial evidence' signifies a high quantum of evidence which, at the minimum, must be 'relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable [person] that an injury or death is not work connected.'" Van Ness, 131 Hawai'i at 558, 319 P.3d at 477 (quoting Flor v. Holguin, 94 Hawai'i 70, 79, 9 P.3d 382, 391 (2000)). "If the employer fails to adduce substantial evidence to the contrary, the presumption mandates that the claimant must prevail." Id. (quoting Akamine, 53 Haw. at 409, 495 P.2d at 1166). Furthermore, "a reasonable degree of specificity is required in order for medical opinion to rebut the presumption of compensability." Panoke v. Reef Dev. of Haw., Inc., 136 Hawai'i 448, 462, 363 P.3d 296, 310 (2015) (quoting Nakamura v. State, 98 Hawai'i 263, 269, 47 P.3d 730, 736 (2002)).

Pursuant to HRS § 386-3(a) (2015),

> If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents[.]

In Flor, the Hawai'i Supreme Court held that "an employee's injury caused by a disease is compensable as an 'injury by disease,' pursuant to HRS § 386-3, when the disease (1) is caused by conditions that are characteristic of or peculiar to the particular trade, occupation, or employment, (2) results from the employee's actual exposure to such working conditions, and (3) is due to causes in excess of ordinary

4

hazards of employment in general[.]" 94 Hawai'i at 81, 9 P.3d at 393 (citations omitted).

However, the supreme court clarified that the three-part test articulated in Flor "is not applicable to situations in which the disease is alleged to be 'proximately caused by' the employment, rather than alleged to 'result from the nature of the employment.'" Van Ness, 131 Hawai'i at 559-60, 319 P.3d at 478-79 (footnote and brackets omitted). A reviewing court should apply the "unitary" or "nexus" test for injuries by disease "proximately caused by" the employment. Id. at 561 & n.13, 319 P.3d at 480 & n.13. The "unitary" test "requires the finding of a causal connection between the injury and any incidents or conditions of employment." Tate v. GTE Hawaiian Tel. Co., 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994) (citing Chung v. Animal Clinic, Inc., 63 Haw. 642, 648, 636 P.2d 721, 725 (1981)).

In its application of the "unitary" test, the supreme court has held that "the slightest aggravation or acceleration of an injury by the employment activity mandates compensation." Van Ness, 131 Hawai'i at 562, 319 P.3d at 481 (citation omitted). In Van Ness, the claimant "alleged that the aggravation of his asthma resulting from his exposure to vog at [his place of employment] was a compensable injury by disease." Id. at 559, 319 P.3d at 478. The parties did not dispute that exposure to vog exacerbated and aggravated the claimant's asthma. Id. at 563, 319 P.3d at 482. The issue was whether the aggravation of claimant's asthma was "proximately caused by or resulting from the nature of the employment." Id. at 559, 319 P.3d at 478. The

supreme court determined that the "evidence overwhelmingly demonstrated that [claimant's] exposure to vog at work, combined with the surrounding circumstances of his employment and his pre-existing condition, resulted in the exacerbation of his asthma." Id. at 564, 319 P.3d at 483. The supreme court concluded that claimant's employer had "failed to present substantial evidence to overcome the presumption that the aggravation of [claimant's] asthma was an injury 'by disease proximately caused by' his employment." Id. at 565, 319 P.3d at 484.

Our analysis begins with the presumption that Claimant sustained a compensable injury by disease. HRS § 386-85. The LIRAB determined in FOF 5 that the "symptoms and conditions claimed by Claimant have their bases in basically three diagnoses . . . allergic rhinitis, gastroesophageal reflux disease [(GERD)], and an anxiety disorder." Claimant contends that "[t]his finding is in error because it ignores the illnesses and symptoms diagnosed by treating physicians and experts which are consistent with toxic mold exposure." It is the Employer's burden to produce substantial evidence to rebut the presumption that Claimant's alleged conditions are compensable work-related injuries. Van Ness, 131 Hawai'i at 558, 319 P.3d at 477. Employer contends it "presented substantial, credible, and persuasive medical evidence to show that Claimant's injuries on August 31, 2007 did not arise out of and in the course of his employment." In support of its contention, Employer relies on the reports of Drs. Cupo, Arora, and Likewise.

Dr. Cupo diagnosed Claimant with, *inter alia*, chronic allergic conjunctivitis and rhinosinusitis with sensitivity to dust mites, chronic GERD, and chronic anxiety. Dr. Cupo opined that Claimant's diagnosis was "not caused, aggravated, or accelerated by job activities as a meat cutter for Times Supermarkets." Dr. Cupo opined that "the reality of Claimant's situation is that his multiple symptoms can in no way be explained by exposure to mold between August 2004 and December 2007 at the Kaneohe Store[.]" Dr. Cupo noted that:

> The reality of the situation is that allergy skin testing performed on 2/2/08 by Dr. Suga revealed positivity only to dust mites and negativity to molds. The reality of the situation is that allergy skin testing repeated on 10/30/09 by Dr. Kuo similarly showed positivity to dust mites and negativity to molds. The reality of the situation is that Claimant's multiple symptoms have actually worsened rather than abated during the greater than three years since December 2007, when the employee voluntarily terminated his job and thus has been out of the environment of the Kaneohe store where he worked as a meat cutter for Times Supermarkets. The reality of the situation is that employee had [GERD] prior to commencing work at the Kaneohe Store in August 2004 as a meat cutter for Times Supermarkets, as documented by Dr. Chun in his clinical note of 7/12/04. The reality of the situation is that the employee's multiple symptoms have been precipitated by other identifiable factors, such as oily foods in the case of [GERD]; stress from his relationship with his girlfriend in the case of chronic anxiety; and exposure to dusty home environment in the case of chronic allergic rhinosinusitis.

Dr. Cupo opined that Claimant's "multiple symptoms are easily and medically plausibly explainable by other medical conditions without the need to concoct exposure to mold at the Kaneohe Store between August 2004 and December 2007 while [he] was working as a meat cutter for Times Supermarkets as causal."

Dr. Arora also opined that Claimant's conditions were not caused or aggravated by mold exposure. Dr. Arora wrote that the "black mold of concern" is "Stachybotrys chararum, which does not grow on walls and ceilings." Dr. Arora noted that the "black

mold that grows in lighted areas on walls or ceilings is Ciadosporium, which is a relatively benign mold, causing only allergies." Dr. Arora related that Claimant "had no documented mold allergies after repeat testing." Additionally, Dr. Arora noted that molds can produce toxicity. However, Dr. Arora wrote that "toxicity from inhalation of spores in an indoor environment has not been documented or established in humans." Dr. Arora wrote that "even if we assume that the supermarket building in which [Claimant] worked, had Stachybotrys growing in the attic, and it was the worst building ever described in the United States, then one would not anticipate more than 1700 spores of Stachybotrys per cubic meter. That will not be sufficient to cause toxicity from inhalation." Dr. Arora concluded that the "issue of mold toxicity in [Claimant] is purely speculative and conjectural. [Claimant] apparently was misled by whatever he saw on TV and assumed that any black mold anywhere is toxic and dangerous."

Drs. Cupo and Arora also provided alternative explanations for Claimant's allergic rhinitis, GERD, and anxiety. Dr. Cupo wrote that Claimant's "multiple symptoms have been precipitated by other identifiable factors, such as oily foods in the case of [GERD]; stress from his relationship with his girlfriend in the case of chronic anxiety; and exposure to dusty home environment in the case of chronic allergic rhinosinusitis." Dr. Arora determined that Claimant's allergy to dust and mite explains his allergic rhinitis. Dr. Arora wrote that Claimant's "headaches, dizziness, memory problems, visual problems, chest

pains, palpitations, etc. can be more than adequately explained by his chronic anxiety and panic disorder manifesting as hyperventilation time to time and causing these symptoms." Dr. Arora noted that "orthopedic injury with weight gain[,] use of pain medications such as narcotics . . . or emotional issues" could aggravate Claimant's GERD.

Drs. Cupo and Arora examined Claimant and reviewed his medical records. In their reports, Drs. Cupo and Arora explained why mold exposure could not have caused or aggravated Claimant's injuries, and did not provide mere generalized medical opinions. See e.g., Nakamura, 98 Hawai'i at 269, 47 P.3d at 736 (recognizing that a doctor's report identifying symptoms and behaviors attributable to claimant's pre-existing illness as the source of claimant's "work-related difficulties" constitute "more than a mere 'generalized medical opinion' concerning [claimant's] pre-existing condition."); CF. Korsak v. Haw. Permanente Med. Grp., 94 Hawai'i 297, 308, 12 P.3d 1238, 1249 (noting that doctors' reports provided generalized medical opinions and did not adequately explain whether physical therapy sessions exacerbated claimant's back injury). As such, Dr. Cupo and Arora's reports provide a sufficient degree of specificity to rebut the presumption of compensability that Claimant's injuries were caused, aggravated, or accelerated by mold exposure. Panoke, 136 Hawai'i at 462, 363 P.3d at 310 (quoting Nakamura, 98 Hawai'i at 269, 47 P.3d at 736).

In addition, Dr. Likewise performed an independent psychological examination in which he performed a series of

psychological tests including the Minnesota Multiphasic Personality Inventory-2 (MMPI-2), Millon Clinical Multiaxial Inventory-III (MCMI-III), Battery for Health Improvement 2 (BHI-2), and Structured Inventory of Malingered Symptomatology. Dr. Likewise noted that Claimant's score on the "Structured Inventory of Malingered Symptomatology far exceeded the cutoff score for suspected malingering." The MMPI-2 test indicated that Claimant's "FBS (Fake Bad Scale) was sharply elevated . . . in the range associated with malingering." Dr. Likewise noted that "FBS scores this high are consistent with gross over-reporting of somatic and affective symptoms." Dr. Likewise also noted that Claimant's Hysteria score "occurs with very high frequency among individuals involved in compensation-seeking litigation." The MCMI-III test indicated that Claimant's "profile was consistent with depressive, schizoid and dependent personality traits/features." Dr. Likewise reported that the BHI-2 test confirmed Claimant's "significant symptom magnification."

Dr. Likewise diagnosed Claimant with, *inter alia*: (1) hypochondriasis, chronic severe; rule out delusional disorder; (2) somatization disorder, chronic, severe; (3) generalized anxiety disorder, chronic (with panic attack); (4) partner relational problem, chronic; and (5) dependent personality disorder. Dr. Likewise opined that Claimant developed a "comorbid Hypochondriasis" as a result of his "underlying, severe Somatization Disorder (i.e., his long-standing preoccupation with multiple, medically unexplained somatic complaints[.])" Dr. Likewise explained that Hypochondriasis is a "pathological

preoccupation with fears of having a specific, serious disease based on a misinterpretation of one or more bodily signs or symptoms." Dr. Likewise concluded that Claimant had a panic attack on August 31, 2007. Dr. Likewise explained that "[p]anic attacks are not psychological disorders, but are rather transient anxiety responses." Dr. Likewise opined that Claimant's panic attack was "caused by his profoundly pathological preoccupation with and misinterpretation of a broad range of somatic symptoms." Dr. Likewise stated that Claimant's "Generalized Anxiety Disorder, Somatization Disorder and Hypochondriasis are not related to or caused by his employment at Times Supermarkets or the 8/31/07 injury date." Dr. Likewise explained that Claimant's conditions are "entirely pre-existing in nature[,]" and caused by a "Dependent/Histrionic personality disorder." Dr. Likewise opined that Claimant "did not develop a mental/psychiatric disorder related to his employment with Employer and/or the 8/31/07 incident."

"Once the trier of fact determines that the employer has adduced substantial evidence to overcome the presumption, it must weigh the evidence elicited by the employer against the evidence elicited by the claimant." Igawa v. Koa House Rest., 97 Hawai'i 402, 409, 38 P.3d 570, 577; Panoke, 136 Hawai'i at 461-62, 363 P.3 at 309-10. In the instant case, the LIRAB credited the opinion of "Drs. Cupo, Likewise, and Arora over those of Drs. Hope and McCaffrey." Dr. Hope "opined that Claimant's conditions or symptoms were caused by, contributed, or aggravated by his work or working conditions." The LIRAB noted that Dr. Hope "did

not examine or treat Claimant[,]" and that there "is no indication as to what medical data she relied on to form an opinion regarding causation of Claimant's condition." Dr. McCaffrey assessed Claimant's condition as "[a]dult respiratory distress syndrome with environmental mold exposure[.]" The LIRAB noted that Dr. McCaffrey's reports were "contrary to the medical evidence[,]" and also "discussed the work injury in conjunction with areas or conditions not claimed by Claimant in the subject appeal." On this record, we decline to disturb the LIRAB's evaluation of the weight and credibility of the evidence.

Claimant also raises the following five sub-arguments regarding the presumption of compensability: (1) Employer failed to provide evidence that the Kaneohe Times Supermarket was clean and mold free; (2) Employer failed to present evidence to rebut the laboratory results of mycotoxin substances; (3) the Independent Medical Examination (IME) opinions do not "rule out mycotoxins as the cause of [Claimant's] illnesses and symptoms"; (4) independent medical literature confirms Drs. Hope, McCaffrey, and Suenaga's opinions; and (5) Dr. Arora's medical articles confirms that Claimant's illness was caused by mold exposure. These sub-arguments are without merit.

In his first sub-argument, Claimant argues that Employer failed to provide evidence that the Kaneohe Times Supermarket was clean and mold free. However, it is undisputed that "mold was present in the area of Claimant's work environment during the period in question[,]" and that "Claimant was exposed to such mold." Employer did not challenge FOFs 17 and 18, and

thus they are binding. <u>State v. Kiese</u>, 126 Hawai'i 494, 502, 273 P.3d 1180, 1188 (2012).[3] However, the record includes substantial evidence of a high degree of specificity, quantity, and quality that Claimant did not have a mold allergy and that Claimant's conditions were not otherwise caused by exposure to mold in the workplace. In his remaining sub-arguments, Claimant requests that the court reassess the weight of the evidence presented at the Hearing. As discussed above, we decline to disturb the LIRAB's evaluation of the weight and credibility of the evidence.

Based on the foregoing, we conclude that the LIRAB did not err when it found that Employer presented relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable person that Claimant's injuries are not connected to his work.

(2) Claimant argues that the LIRAB erred in crediting Dr. Likewise's opinion, which he characterizes as a "fictional essay," because Claimant was (based on his own assessment) healthy prior to work at Employer's Kaneohe store. It appears, however, that Dr. Likewise's opinion was based on his examination and a battery of psychological tests performed on Claimant, as

---

[3]     FOF 17 and 18 provides:

> [FOF 17]: Employer has not presented any evidence that contradicts the presence of the alleged black mold at the workplace. Therefore, the Board finds that, for purposes of this Decision and Order, such black or dark substance was evidence that mold was present in the area of Claimant's work environment during the period in question.

> [FOF 18]: The Board further finds that Claimant was exposed to such mold.

well as Claimant's extensive medical data and records, which indicated that Claimant had seen literally dozens of health professions for multiple symptoms.[4] Upon review, we cannot conclude that the LIRAB erred in crediting the opinion of Dr. Likewise.

(3)  Claimant argues that the LIRAB erroneously excluded Dr. Hope's declaration (**Exhibit A-1**), Dr. Hope's credentials (**Exhibit B**), and articles on Dr. Arora (**Exhibit FF**).[5] Claimant contends that the LIRAB's exclusion of his exhibits and acceptance of the Employer's IME reports was erroneous and prejudicial.

This court is not able to properly review what was presented before the LIRAB as there are no transcripts of the June 14, 2013 and June 17, 2013 hearing in the record.

---

[4]  From 2004 to 2007, Claimant was evaluated by multiple doctors, including but not limited to, Dr. Mark Baker, Dr. Robert Canonico, Dr. Michael W. Chan, Dr. Bernard K. Chun, Dr. Wooyoung W. Chung, Dr. Gregory A. Cogert, Dr. Benedicto Galindo, Dr. Sorbella Guillermo, Dr. Linda L. Jenks, Dr. Katherine S.H. Jim, Dr. Darryl M. Kan, Dr. Eugene Kitts, Dr. E. Howard Klemmer, Dr. Peter C.S. Lee, Dr. S. James Lee, Dr. Clyde T. Miyaki, Dr. Timothy H. Moon, Dr. Joel Peck, Dr. Philip Suh, Dr. Byron M.W. Wong, and Dr. Melvin H.C. Yee, seeking treatment for abdominal pain, back pain, blurred vision, chest pain, diarrhea, difficulty swallowing, dizziness, earaches, fever, headaches, heart burn, a laceration to his left index finger, lightheadedness, nausea, palpitations, shortness of breath, and shoulder pain. In addition, after the alleged August 31, 2007 workplace injury, from 2008 to 2010, in addition to the testifying doctors, Claimant was evaluated by multiple doctors, including but not limited to, Dr. Harry Acuna, Dr. Kristi Adachi, Dr. Carmen Baybayan, Dr. Michael Bornemann, Dr. Michael W. Chan, Dr. Jason K. Fleming, Dr. Darryl M. Kan, Dr. Eugene Kitts, Dr. Brandt K. Lapschies, Dr. Peter C.S. Lee, Dr. Herbert Lim, Dr. Clyde T. Miyaki, Dr. Wilson T. Murakami, Dr. Thinh T. Nguyen, Dr. Joel Peck, Dr. Natalie Relles, Dr. Wayne M. Suga, Dr. Curtis Takemoto-Gentile, Dr. Sherrie M. Takushi, Dr. Brian A. Tobe, and Dr. David C. Wei for abdominal pain, chest pain, diarrhea, epigastric pain, facial numbness, GERD, hyperthyroidism, nausea, near syncope, palpitations, prostatitis, shortness of breath, shoulder pain, skin irritation, sleep apnea, sore throat, and tinnitus.

[5]  As described in Claimant's exhibit list, Exhibit FF consists of, *inter alia*, articles on Dr. Arora, disciplined physicians list, summary of administrative actions, accusations and/or petitions to revoke probation filed against Dr. Arora, physician's health grades, and Dr. Arora's sanctions and complaint history in California.

Nevertheless, upon review of the LIRAB's March 10, 2014 Decision and Order, it appears that the LIRAB excluded Exhibits A-1, B, and FF, because the exhibits were not timely submitted. With regard to Exhibit A-1 and B, the LIRAB found that "Claimant did not file a motion [or] enter into a stipulation to allow for the inclusion of Dr. Hope's declaration or other material after the various deadlines." The LIRAB further noted that the Claimant did not file a motion to extend deadlines, "which would have allowed Dr. Hope's Declaration to be submitted after the relevant deadline." With regard to Exhibit FF, the LIRAB concluded that all evidence, with the exception of deposition transcripts of a deposition taken before the discovery deadline, must be filed by the discovery deadline. The LIRAB did not credit Claimant's argument that medical article-type exhibits were not required to be filed pursuant to the medical reports deadline or discovery deadline.

The LIRAB "may enter a pretrial order" establishing medical report and discovery deadlines. Hawai'i Administrative Rules (**HAR**) § 12-47-22 (West 2017). A medical report deadline is "the date that all medical reports or records shall be filed at the board." HAR § 12-47-22(b)(3). A discovery deadline is "the date that all non-medical documents or records shall be filed at the board, except that the transcript of an oral deposition of any individual conducted before such deadline may be filed after such deadline." HAR § 12-47-22(b)(4). Furthermore, this court has recognized that the LIRAB has "'wide discretion in managing evidence[,]' and the LIRAB's evidentiary rulings should be

15

upheld, absent a showing of an abuse of discretion." Athens v. Int'l Archaeological Research Inst., Inc., No. 29495, 2011 WL 5997078 at *1 (Haw. App. Nov. 30, 2011) (SDO) (quoting Sugano v. Dept. of Atty. Gen., No. 29246, 2010 WL 231100 at *3 (Haw. App. Jan. 22, 2010) (SDO)); see also HAR § 12-47-41 (West 2017).[6]

It was within the LIRAB's discretion to exclude the Claimant's exhibits as untimely. Claimant does not provide a reasonable explanation for his failure to submit Exhibits A-1, B, and FF, prior to the medical reports and discovery deadlines. Gabriel v. Dep't of Parks & Recreation, No. 29789, 2013 WL 6008490, at *7 (Haw. App. Nov. 12, 2013) (mem. op.). Furthermore, Claimant fails to provide any evidence demonstrating prejudicial treatment with respect to the LIRAB's admission of exhibits. Under these circumstances, we conclude that Claimant's point of error is without merit.

(4) In CAAP-16-0000029, Claimant contends that the LIRAB erred by not remanding the proceedings for a ruling on the merits, arguing that the LIRAB failed to comply with the Hawai'i Administrative Procedure Act (**HAPA**), HRS chapter 91 (2012 and Supp. 2016), and engaged in improper rulemaking when it vacated the Director's decision in its December 22, 2015 Decision and Order.

---

[6] HAR § 12-47-41 provides:

The board shall not be bound by statutory and common law rules relating to the admission or rejection of evidence. The board may exercise its own discretion in these matters, limited only by considerations of relevancy, materiality, and repetition, by the rules of privilege recognized by law, and with a view to securing a just, speedy, and inexpensive determination of the proceedings.

16

Under HAPA, a rule is defined as an "agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency." HRS § 91-1(4) (2012). The definition of "rule" "does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda." Id. In a recent opinion, the supreme court explained that the definition of "rule" has two elements. Green Party of Haw. v. Nago, 138 Hawai'i 228, 237, 378 P.3d 944, 953 (2016). "The first element is that the agency statement be of (a) general or particular applicability and (b) future effect. The second element provides that the agency statement (a) implements, interprets, or prescribes law or policy, or (b) describes the organization, procedure, or practice requirements of any agency." Id. Furthermore, the "purpose of rule-making is to govern the future conduct of groups and individuals, not determining damages resulting from past conduct." Id. at 238, 378 P.3d at 954 (quoting Pila'a 400 LLC v. Bd. of Land & Nat. Res., 132 Hawai'i 247, 266, 320 P.3d 912, 931 (2014)).

Claimant argues that the LIRAB engaged in rulemaking when it vacated the Director's decision in excess of its authority under HRS § 386-87 (2015)[7] to "affirm, reverse or

_____

[7]     HRS § 386-87 provides in relevant part:

(continued...)

modify any compensation case upon review, or remand the case to the director for further proceedings and action." In its December 22, 2015 Decision and Order, the LIRAB vacated the Director's decision denying the November 21, 2011 claim as a new or subsequent injury claim. The LIRAB found that the November 21, 2011 claim was filed by Claimant to amend the September 3, 2010 claim for an August 31, 2007 injury. The LIRAB also determined that the issue of timeliness and compensability were resolved in the March 10, 2014 Decision and Order. The LIRAB's decision to vacate the Director's decision is not a "rule" under HAPA because it is not a statement of general or particular applicability that governs future conduct. Green Party, 138 Hawai'i at 238, 378 P.3d at 954. The LIRAB's decision to vacate was specific to and dependent upon the factual circumstances and procedural history of the case. There is no indication that the LIRAB's decision to vacate will impact the future rights of other claimants seeking compensation. As such, we are not persuaded by Claimant's contention that the LIRAB engaged in improper rulemaking under HAPA.

Finally, Claimant argues that the LIRAB lacked the statutory authority to allow Dr. Arora's IME under HRS § 386-79

---

[7](...continued)
> (c) The appellate board shall have power to review the findings of fact, conclusions of law and exercise of discretion by the director in hearing, determining or otherwise handling of any compensation case and may affirm, reverse or modify any compensation case upon review, or remand the case to the director for further proceedings and action.

(2015).[8]   However, Claimant does not provide any record citations to where in the record he raised this argument.  This is insufficient under Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7), which provides that the opening brief should include an argument section "containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on" and that "[p]oints not argued may be deemed waived." HRAP Rule 28(b)(7); see also Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 114 n.23, 176 P.3d 91, 113 n.23 (2008) ("this court is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions." (citation and brackets omitted)).  Furthermore, this court is not able to properly review what was presented before the LIRAB as there are no transcripts of the August 26, 2014, August 27, 2014, and September 26, 2014 hearing in the

---

[8]   HRS § 386-79 provides in relevant part:

§386-79 **Medical examination by employer's physician.** After an injury and during the period of disability, the employee, whenever ordered by the director of labor and industrial relations, shall submit to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer. The employee shall have the right to have a physician or surgeon designated and paid by the employee present at the examination, which right, however, shall not be construed to deny to the employer's physician the right to visit the injured employee at all reasonable times and under all reasonable conditions during total disability.

.  .  .  .

Employer requested examinations under this section shall not exceed more than one per case unless good and valid reasons exist with regard to the medical progress of the employee's treatment. The cost of conducting the ordered medical examination shall be limited to the complex consultation charges governed by the medical fee schedule established pursuant to section 386-21(c).

record.    For these reasons, we cannot adequately review Claimant's argument.    Based on the foregoing, we affirm the LIRAB's December 22, 2015 Decision and Order.[9]

Accordingly, we affirm the LIRAB's March 10, 2014 Decision and Order and December 22, 2015 Decision and Order.

DATED: Honolulu, Hawai'i, March 31, 2017.

On the briefs:

Stanford H. Masui,
Erin Masui,
(Law Offices of Masui - Masui)
for Claimant-Appellant.

Shawna L.M. Benton,
(Leong Kunihiro Lezy & Benton)
for Employer-Appellee and,
Insurance Carrier-Appellee.

Craig H. Nakamura
Chief Judge

Associate Judge

Lawrence M Reifurth
Associate Judge

--------

[9]    As we conclude that the LIRAB did not err in vacating the Director's decision on the grounds that Claimant did not make a new claim, we do not address Claimant's argument that the LIRAB should have determined whether the Employer presented substantial evidence to rebut Claimant's further evidence and the presumption of compensability.